**234**

**SORIANO v. UNITED STATES et al.**

United States District Court
S. D. New York.
Feb. 18, 1953.

specified in the following subdivisions of paragraph 7 of the libel—

"(a) failing to provide a reasonable and safe place for libellant to perform his duties;

"(b) failing to provide careful, competent, proper and skillful co-employees and superior officers;

"(c) directing the work to be done in an improper and unsafe manner;

"(d) failing to provide sufficient number of men to do the work;

"(e) requiring libellant to return to duty despite his disability;

"(f) failing to provide proper and adequate medical care and attention and maintenance for the alleviation and cure of libellant's injuries;

"(g) failing to provide libellant with a safe and seaworthy vessel and safe appurtenances, and to keep the same in a safe and seaworthy condition."

There was no evidence to support the allegations of subparagraphs (a) and (g). The vessel was seaworthy and libelant was working in a safe place.

Harold Guttman, New York City ·(Samuel J. Stark (of Stark and Goldstein), Philadelphia, Pa., of counsel), for libelant.

Myles J. Lane, U. S. Atty., New York City, by Hanrahan & Brennan, New York City (Michael E. Hanrahan, New York City, of counsel), for respondents.

LEIBELL, District Judge.

The libel pleads two causes of action: the first is for damages based on the alleged negligence of the respondent; the second is for an award for maintenance.

As appears from the above findings, the libelant was a seaman aboard the respondent's vessel, the S.S. John La Farge and he was injured on the evening of June 29, 1946, while working at the vegetable box. At the time, the vessel was enroute from Philadelphia to Rotterdam. The alleged negligence of the respondents, their officers and agents is

In support of the allegations in subparagraphs (b), (c) and (d) libelant testified that the chief steward ordered him and the third cook to do the job of cleaning out the vegetable box (a chill box or refrigerator in which vegetables and fruits were stored for the meals of the crew during the voyage) although four men were required to do that work. I have found that two men could do the work; that the chief steward originally ordered the chief cook to help do the job, but that he declined it. This was an overtime job, which afforded them a chance to make some extra money. The men could not be required to do the work. Accepting the assignment was purely voluntary.

It was not work that called for a superior officer to supervise it. Cleaning out the vegetable box was a job that was done every two weeks. If four men,

two teams, worked on it, the job could be done in half the time, but each man would earn that much less overtime. Two men could do the job easily and they would earn more overtime because it would take more time. In fact, after the libelant hurt his left foot the third cook was able to finish the job alone.

Libelant and the third cook could have worked as a team, carrying the sacks of potatoes and the boxes or crates of vegetable and fruits to the door of the vegetable box and then piling them in the passageway in stacks. The vegetable box would then be ready for cleaning. After it was cleaned out the two men, working together, could have lifted the boxes of apples down from the top of the stacks and carried them into the vegetable box. If that had been done the box of apples would not have fallen on libelant's foot. Libelant and the third cook decided to divide the work; the third cook working inside the box and the libelant working outside in the passageway.

If the two boxes of apples were not securely stacked on top of the sacks of potatoes in the passageway, that was libelant's fault. He stacked them. If he stacked them too high, that was also his own fault. If in lifting the top box of apples off the box beneath it he loosened the under box and caused it to fall, that too was libelant's fault.

Libelant and the third cook were experienced men. Libelant does not charge the third cook with any negligence. Nobody told libelant that he had to stack the vegetables and fruit in the passageway as high as he did or in the place where he stacked them or in the manner in which he did it. This was a job that was done regularly every two weeks, and any one working in the steward's department would know how to do it.

■ Items (e) and (f) of paragraph 7 of the libel relate to the alleged failure of the respondent to provide libelant with proper and adequate medical care and attention, and for aggravation of libelant's condition by requiring him to return to work while disabled. The believable testimony is to the contrary. When the third cook reported libelant's injury to the Purser about 11:00 P.M. on June 29th, the Purser directed that libelant bathe his foot in a solution of epsom salts which he supplied. When the vessel reached Rotterdam, the libelant was promptly sent ashore by the Master to see a doctor. There was no negligence on the part of the Purser or the Master in following that course. Evidently the libelant was not in any pain because he could go ashore on his own to see the doctor at Rotterdam, and even went ashore at that port one evening for recreation.

The doctor recommended the use of an ointment and rest. Libelant's job did not require long periods of work. He worked three times a day in the preparation of meals and he rested in between meals. The chief steward's deposition shows that libelant never asked to be relieved from duty. In fact libelant worked overtime on the return voyage from England. I do not believe the libelant's story that he was required to work despite his protests after the accident and on the return voyage.

I have therefore concluded that the libelant's first cause of action, based on the alleged negligence of respondent and the alleged unseaworthiness of the vessel, should be dismissed on the merits.

■■ The libelant was injured while in the service of the vessel and accordingly is entitled to maintenance during the period he was receiving medical attention and until he received the maximum of cure possible in his case. He was an out-patient at the Stapleton Hospital at various times in August and September 1946. He returned to sea on October 31, 1946. His maintenance for that period, at the then allowable rate of $3.50 a day, amounts to $315 and that is the sum which I have awarded him. There is no basis for the claim for maintenance in 1947, from July 18th to October 26th. If his feet were bothering him then, it was due to an arthritic condition common to both feet.